UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JOSHUA GOLSTON,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _01/12/2024_

23 Cr. 362 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On July 19, 2023, a Manhattan grand jury returned a three-count indictment (the "Indictment") charging Defendant, Joshua Golston, with distribution of narcotics, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C) ("Count One"); possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1) ("Count Two"); and firearms use, carrying, and possession, in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count Three"). Indictment, ECF No. 4. Golston now moves to dismiss (1) the Indictment as untimely filed under the Speedy Trial Act, (2) Count Three as lacking the requisite "nexus," and (3) Counts Two and Three as violating the Second Amendment of the Constitution. Def. Mem., ECF No. 25. For the reasons stated below, the motion is DENIED.

## BACKGROUND

On June 7, 2023, an undercover New York City Police Department officer entered a Manhattan Dunkin' Donuts and began speaking with Golston.[1] Complaint ¶ 5(a)-(d), ECF No. 1. The officer gave Golston "approximately $40 in exchange for approximately 5 individual glassine envelopes containing what appeared . . . to be heroin." *Id.* ¶ 5(e). Officers arrested Golston after the transaction was completed. *Id.* ¶ 5(f). During a search of Golston's person,

---

[1] The following allegations are taken from the Complaint. The Court has not held an evidentiary hearing and makes no findings of fact or credibility determinations.

officers found substances that appeared to be crack cocaine, heroin, synthetic marijuana, and ecstasy, as well as a 9mm pistol. *Id.* ¶ 5(g)-(k).

Golston was presented before the Honorable Sarah Netburn the next day. ECF No. 3. Judge Netburn ordered Golston detained and scheduled a preliminary hearing for June 22, 2023. *Id.*

On June 15, 2023, the Government and Golston's then-counsel, Clay Hubbard Kaminsky, conferred regarding the possibility of a plea agreement. Gov. Decl. ¶ 2, ECF No. 28-1. Kaminsky and the Government "discussed the approaching preliminary hearing" and agreed to a "rollover"—"a colloquial term for a typically 30-day adjournment of the preliminary hearing and continuance of the Speedy Trial Act indictment deadline." Gov. Opp. at 6, ECF No. 28; *see also* Gov. Decl. ¶¶ 2–3; Def. Mem. at 2. Kaminsky and the Government memorialized the rollover agreement in an email that day. ECF No. 28-3.

On June 22, 2023, the Government's docketing assistant emailed the Government's request for a continuance of the preliminary hearing until July 24, 2023 (the "Continuance Application") to the Honorable Barbara Moses. ECF No. 28-5; *see also* ECF No. 28-4. The Continuance Application stated that the parties planned to continue discussing possible disposition of the case, and that Golston's counsel, Kaminsky, consented to the request. ECF No. 28-4 ¶¶ 5–6. The Government inadvertently did not sign the Continuance Application, and it was never issued or docketed. Gov. Mem at 6, 8.

The parties continued discussing a possible plea agreement, but "[n]o pretrial disposition materialized." *Id.* at 8. The grand jury returned the Indictment on July 19, 2023. *Id.* Golston was arraigned before the Honorable James L. Cott on July 31, 2023, and pleaded not guilty to all three counts. ECF No. 7.

2

On August 23, 2023, the Government's docketing assistant emailed Judge Moses's chambers to request a copy of the Continuance Application.  ECF No. 28-7.  Judge Moses replied that she had not so-ordered the Continuance Application because it was missing the Government's signature.  ECF No. 28-10.  The Government re-submitted a signed version of the Continuance Application, *see* ECF Nos. 28-13 to -14; Judge Moses "appears not have acted on the revised paperwork," Gov. Opp. at 10.

On September 12, 2023, the parties appeared before the Court for an initial conference.  *See* ECF No. 16.  At the conference, the Court relieved Kaminsky and appointed Golston's current counsel.  *Id.*

## DISCUSSION

Golston moves to dismiss the Indictment on three grounds.  First, he argues that the Indictment was "procured in violation of the Speedy Trial Act," necessitating dismissal of all counts.  Def. Mem. at 1.  Second, he contends that Count Three—firearms use, carrying, and possession, in violation of 18 U.S.C. § 924(c)—must be dismissed "because there is no nexus between the firearm and the narcotics offense charged in Count One."  *Id.*  Third, he argues that Counts Two and Three are "constitutionally barred" by the Supreme Court's ruling in *N.Y. State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1 (2022).

I.   Speedy Trial Act

Under Section 3161(b) of the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, "[a]ny . . . indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b).  This thirty-day window excludes certain periods of time, set forth in 18 U.S.C. § 3161(h).  As relevant here, Section 3161(h)(1)(D)

("subsection (D)") excludes "delay resulting from any pretrial motion." Section 3161(h)(1)(H) ("subsection (H)"), moreover, excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." After tabulating excluded time, the Court calculates the thirty-day period. If a grand jury fails to return an indictment within the period, "such charge against that individual . . . shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1).

Golston argues that the Indictment must be dismissed "because the [G]overnment failed to indict [him] within 30 days" of his arrest.[2] Def. Mem. at 5. He contends that forty-one days passed between his arrest and indictment, but the Government did not "seek[] or obtain[] leave" to exclude the additional time. *Id.* The Government argues that its Continuance Application "tolled the Speedy Trial clock from the date of its submission on June 22, 2023, until at least the date that [Golston] was indicted, July 19, 2023." Gov. Opp. at 13. The Court agrees with the Government.

Golston's arrest on June 7, 2023, triggered the speedy trial clock. 18 U.S.C. § 3161(b). The thirty-day clock began to run the next day. *See* Fed. R. Crim. P. 45(a)(1)(A) ("[E]xclude the day of the event that triggers the period").

Under subsection (D), for pretrial motions that do not require a hearing, a period of delay

---

[2] Golston separately notes that the preliminary hearing, initially scheduled for June 22, 2023, was never held. Def. Mem. at 2–3. The Government responds that the Continuance Application sought to adjourn the preliminary hearing to July 24, 2023, and that, regardless, the returning of the Indictment mooted this issue. Gov. Opp. at 29–31.

    Under Federal Rule of Criminal Procedure 5.1(c), a magistrate judge must hold a preliminary hearing "no later than 14 days after the initial appearance if the defendant is in custody." Failure to hold a timely preliminary hearing requires that the defendant be released without prejudice to the institution of further criminal proceedings on the same charges. *See* 18 U.S.C. § 3060(d). After a defendant is indicted, however, "any claim that [he] might have had for release pending further criminal proceedings [is] rendered moot." *United States v. Williams*, 526 F. App'x 29, 36 (2d Cir. 2013). Golston acknowledges that he is not seeking to dismiss the Indictment based on the allegedly untimely preliminary hearing. Def. Reply at 11. The Court, therefore, agrees with the Government that the argument is moot.

"from the filing of the motion through the . . . prompt disposition of" the motion is excludable. And under subsection (H), a period of delay "not to exceed thirty days" is excludable "during which any proceeding concerning the defendant is actually under advisement by the court."   The Supreme Court addressed the relationship between the two subsections in *Henderson v. United States*, 476 U.S. 321 (1986).  As the Court explained, the "promptness requirement" in subsection (D) was "intended to provide a point at which time will cease to be excluded, where motions are decided on the papers filed without hearing."  *Id*. at 329 (quoting S. Rep. No. 96–212, at 34).  That point in time "is identified by subsection [(H)], which permits an exclusion of 30 days from the time a motion is actually 'under advisement' by the court."[3]  *Id*.  In other words, subsection (H) places a thirty-day limit on subsection (D)'s otherwise open-ended exclusion of time for motions not requiring a hearing.

Here, the Continuance Application is a "motion" within the meaning of subsection (D). *United States v. Palmer*, No. 20 Cr. 379, 2021 WL 1614837, at *3 (S.D.N.Y. Apr. 26, 2021); *see also Melendez v. United States*, 518 U.S. 120, 126 (1996) ("'[M]otion' generally means '[a]n application made to a court or judge for purpose of obtaining a rule or order directing some act to be done in favor of the applicant.'" (quoting Black's Law Dictionary 1013 (6th ed. 1990)).  The Court assumes that the Continuance Application, as a routine scheduling request, did not require a hearing.  Therefore, a period of up to thirty days was excludable under subsection (D) beginning on June 22, 2023, when the Government submitted the Continuance Application to the magistrate judge.  *See Henderson*, 476 U.S. at 329.

Golston argues that the Continuance Application was an "ex parte email request" that

---

[3] After *Henderson*, then-subsection (J) was redesignated as subsection (H), and then-subsection (F) became subsection (D).  *See* Judicial Administration and Technical Amendments Act of 2008, Pub. L. 110-406, § 13, 122 Stat. 4294 (Oct. 13, 2008).

was never "filed" and does not qualify as a "motion" under subsection (D).  Def. Reply at 1–2, ECF No. 29.  Not so.  In *United States v. Louis*, the Circuit found that a motion "improperly filed with the Magistrate and not received by the government" was nonetheless "a pending motion in the Speedy Trial Act sense."  814 F.2d 852, 857 (2d Cir. 1987).  It is true that the motion in that case was the defendant's, so its ex parte nature did not implicate the danger that the Government could toll the speedy trial clock without the defendant's knowledge.  But that danger is likewise not present here, as Golston's then-counsel knew about and consented to the Continuance Application.

Golston also argues as a "simpl[e] or routine" motion, the Continuance Application should have been decided in "considerably less than 30 days."  Def. Reply at 3 (quoting *Henderson*, 476 U.S. at 329).  Although Golston may be correct as a practical matter, however, the statute provides only a uniform thirty-day window for all motions not requiring a hearing. *Henderson*, 476 U.S. at 329; *see United States v. Wheeler*, 746 F. Supp. 2d 159, 162 (D.D.C. 2010) (rejecting argument that the speedy trial clock should have been tolled, pending the government's continuance motion, for only seven days instead of thirty).

The Court, therefore, holds that the speedy trial clock was tolled for a presumptive thirty days when the Government submitted its Continuance Application, or until July 22, 2023. Because Golston was indicted on July 19, 2023, there was no violation of the Speedy Trial Act.[4]

II.   Nexus

Golston next argues that Count Three of the Indictment must be dismissed because, "viewing a full proffer of the government's evidence, there is nothing that establishes a nexus

---

[4] In so holding, the Court does not reach the question of when Judge Moses took the Continuance Application "under advisement" for the purposes of subsection (H).

between the firearm and the narcotics possession charged in Count One." Def. Mem. at 10. The Government contends that it has not "made a full proffer of its evidence on the Section 924(c) charge, . . . and it is therefore improper for the Court to look beyond the language of the Indictment itself to determine the sufficiency" of Count Three. Gov. Opp. at 34. The Court again agrees with the Government.

Count Three charges violations of 18 U.S.C. § 924(c)(1)(A), which provides that "any person who, during and in relation to any crime of violence or drug trafficking crime[,] . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be subject to additional punishment. At trial, the "in furtherance of" requirement "may be satisfied by a showing of some nexus between the firearm and the drug selling operation." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001).

At this pretrial motion-to-dismiss stage, however, the Court is required to evaluate only the sufficiency of the allegations in the Indictment, not the evidence. "[A]n inquiry into the sufficiency of the evidence [is] premature." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998); *see also United States v. Sampson*, 898 F.3d 270, 282 (2d Cir. 2018). Although a narrow exception to this rule applies when the Government has made a "full proffer of the evidence to be presented at trial," *Alfonso*, 143 F.3d at 777, the Government states that it has made no such proffer in this case. Gov. Opp. at 34. Golston's challenge to the evidence underlying Count Three is, therefore, premature. *See United States v. Gonzalez*, No. 21 Cr. 288, 2022 WL 3684796, at *3 (S.D.N.Y. Aug. 24, 2022).

III. *Bruen*

Third, Golston argues that Counts Two and Three—charging firearm-related crimes under 18 U.S.C. §§ 922(g)(1) and 924(c)—must be dismissed as violating the Second

Amendment of the Constitution under the Supreme Court's decision in *Bruen*.  Def. Mem. at 14.

In *Bruen*, the Supreme Court held that "when the Second Amendment's plain text covers an

individual's conduct, the Constitution presumptively protects that conduct."  597 U.S. at 17.  The

Court thus imposed an affirmative obligation on the Government to "demonstrate that the

regulation is consistent with this Nation's historical tradition of firearm regulation" by

identifying a "distinctly similar historical regulation" or "representative historical analogue."  *Id.*

at 17, 26, 30.  Golston contends that the Government has not made the requisite historical

showing, so the firearm-related counts are facially unconstitutional.[5]  Def. Mem. at 14–15.

Binding Circuit precedent forecloses this conclusion.

      A.  Section 922(g)(1)

Section 922(g)(1) makes it unlawful for any person convicted of a felony to possess a

firearm or ammunition.  Nine years before *Bruen*, the Second Circuit "affirm[ed] that § 922(g)(1)

is a constitutional restriction on the Second Amendment rights of convicted felons."  *United*

*States v. Bogle*, 717 F.3d 281, 281–82 (2d Cir. 2013) (per curiam).  Golston contends that *Bogle*

is no longer good law in the wake of *Bruen*.[6]  Def. Mem. at 30.  The Court disagrees.

In *Bogle*, the Circuit analyzed language from *District of Columbia v. Heller*, 554 U.S.

570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), in which the Supreme Court

---

[5] Golston suggests in passing that the statutes are also unconstitutional as applied to him, but presents no argument specific to his circumstances.  See Def. Mem. at 14.  The Court, therefore, only addresses his facial challenges.  *See United States v. Malka*, 602 F. Supp. 3d 510, 529 (S.D.N.Y. 2022) ("[W]e usually do not decide issues that a defendant raises only in passing." (quoting *United States v. Griffin*, 794 F. App'x 14, 18 (2d Cir. 2019)).

[6] Golston is not the first criminal defendant to pursue this line of argument following *Bruen*.  Other courts in this District have uniformly rejected these challenges, and the Court agrees with their reasoning.  *See, e.g.*, *United States v. Ford*, No. 23 Cr. 107, 2023 WL 7131742, at *2 (S.D.N.Y. Oct. 30, 2023); *United States v. Abreu*, No. 23 Cr. 67, 2023 WL 6541302, at *3 (S.D.N.Y. Oct. 6, 2023); *United States v. Nelson*, No. 22 Cr. 436, 2023 WL 6520378, at *2 (S.D.N.Y. Oct. 4, 2023).

stated that *Heller* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons." 717 F.3d at 281. *Bruen* reaffirmed *Heller* and *McDonald*, and a concurring opinion from two of the six justices in the majority reiterated that restricting the possession of firearms by persons convicted of felonies remains constitutional. *See Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring). In addition, *Bogle* did not employ the "means-end" test for scrutinizing gun regulations that *Bruen* specifically overturned. *See Bruen*, 597 U.S. at 19–24. Therefore, *Bogle* remains binding precedent, and Section 922(g)(1) remains constitutional.[7]

B.   Section 924(c)

As discussed above, Section 924(c) bars the possession of a firearm in furtherance of a drug trafficking crime. Golston contends that the section is unconstitutional because the Government cannot "identify a historical analogue suggesting a constitutional tradition of prosecuting people for merely possessing a firearm while engaging in trade or transactions." Def. Mem. at 19. The Court again disagrees.

The Circuit evaluated the constitutionality of Section 924(c) in *United States v. Bryant*, 711 F.3d 364 (2d Cir. 2013). Examining *Heller*, the Circuit explained that the Second Amendment protects the "right to keep and bear arms for *lawful purposes*." *Id.* at 369 (quoting *Heller*, 561 U.S. at 780). The Circuit concluded that such a right did not extend to the "*unlawful* purpose of possessing a firearm in furtherance of a drug trafficking crime," *id.* at 370, and thus Section 924(c), as applied, did not violate the Second Amendment.

Far from undermining *Bryant*, *Bruen* reaffirmed that the Second Amendment protects

---

[7] Even if the Court were to separately apply the *Bruen* analysis, it would conclude that the regulation is constitutional. Section 922(g)(1) is supported by a "representative historical analogue," specifically, regulations on firearm possession based on perceived dangerousness. *See, e.g.*, *United States v. Ford*, No. 23 Cr. 107, 2023 WL 7131742, at *3 (S.D.N.Y. Oct. 30, 2023).

"the right of an ordinary, *law-abiding* citizen to possess a handgun in the home for self-defense." 597 U.S. at 8–9 (emphasis added).  Nothing in the Supreme Court's decision suggests that the Second Amendment confers a right to possess a gun during the commission of a crime.   Further, nothing in the Amendment's "plain text" "presumptively protects [such] conduct."  *Id.* at 24. Therefore, *Bryant* likewise remains binding precedent, and Section 924(c) remains constitutional.

## CONCLUSION

For these reasons, Golston's motion to dismiss the Indictment is DENIED.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 25.

SO ORDERED.

Dated: January 12, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge

10