```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

UNITED STATES OF AMERICA,

–against–

JOSHUA GOLSTON,

           Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _06/05/2024_

23 Cr. 362 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On March 1, 2024, a jury found Defendant, Joshua Golston, guilty of distribution of narcotics, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C); possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1); and firearms use, carrying, and possession, in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count Three"). Dkt. Entry 3/1/2024; Trial Tr. 377:24–378:12, ECF Nos. 72–79. Golston now moves for a new trial on Count Three pursuant to Federal Rule of Criminal Procedure 33. Def. Mem., ECF No. 82. For the reasons stated below, the motion is DENIED.

## BACKGROUND

Count Three charges a violation of 18 U.S.C. § 924(c)(1)(A), which provides that "any person who, during and in relation to any crime of violence or drug trafficking crime[,] . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be subject to additional punishment. *See* Indictment ¶ 4, ECF No. 4. The "in furtherance of" requirement "may be satisfied by a showing of some nexus between the firearm and the drug selling operation." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001). The Second Circuit has instructed that the nexus inquiry is "'well-suited to resolution by a jury,' which can consider relevant factors like 'the type of drug activity that is being conducted, accessibility of

the firearm, the type of the weapon, . . . whether the gun is loaded, [its] proximity to drugs or drug profits, and the time and circumstances under which the gun is found.'" *United States v. Lewis*, 62 F.4th 733, 746 (2d Cir. 2023) (quoting *United States v. Snow*, 462 F.3d 55, 62–63 & n.6 (2d Cir. 2006)).

Golston argues that the Government "misdescribed the nexus element" of Count Three in its rebuttal summation, warranting a new trial. Def. Mem. at 1. He concedes that the Government accurately stated the nexus requirement during its initial summation, during which the Government explained to the jury:

> Now, I expect that Judge Torres is going to tell you what it means for a firearm to be possessed in furtherance of drug trafficking, and you are required, to be clear, to listen to her, not me, when it comes to instructions on the law. But I expect that Judge Torres will tell you something like this, that for you to conclude that the firearm was possessed in furtherance of drug dealing, the firearm must have had something called a nexus, some purpose or effect with respect to the underlying drug offense such as where the firearm is readily accessible to protect drugs, drug proceeds, or the drug dealer himself. And in deciding whether the gun was used for such a purpose, you may consider various factors. Judge Torres will explain those to you later.

Trial Tr. at 270:16–271:3; *see* Def. Mem. at 3–4, 5 (describing the Government's initial description of the nexus element as "unobjectionable"). In its opening statement, the Government also discussed the evidence that it contended supported a nexus finding, noting that the gun was loaded, Trial Tr. at 274:7–11; was illegally possessed, *id.* at 274:11–23; had a defaced serial number, *id.* at 274:23–275:8; and was physically accessible to Golston during the drug deals, *id.* at 275:9–13.

Then, in its rebuttal summation, the Government told the jury:

> Some of the other facts [the Government] pointed out—and we could just stop right there, ladies and gentlemen—that accessibility of the gun during those drug deals, that's all you need. It speaks for itself, but you can think back to those other facts, too, the gun being strapped to his chest filled with bullets, the fact that the [Defendant] wasn't even allowed to possess a gun because he'd been previously

convicted of a felony, the fact that the serial number was drilled out. All of these things tell you that gun was possessed for drug dealing, not for some other innocent purpose.

Trial Tr. at 311:2–11.

Following summations, the Court instructed the jury:

To possess a firearm in furtherance of the crime means the firearm helped forward, advance, or promote the commission of the crime. The mere possession of the firearm at the scene of the crime is not sufficient under this definition. The firearm must have had some nexus, that is some purpose or effect with respect to the underlying drug offense; such as where the firearm is readily accessible to protect drugs, drugs proceeds or the drug dealer himself. In deciding whether there is such a nexus, you may consider the accessibility of the firearm, whether the firearm was loaded, the type of weapon, whether or not the defendant legally possessed it, the type of drug activity conducted, whether the firearm was stolen, the time and circumstances under which the firearm was found, and the proximity of the firearm to drugs or drug profits. This list of factors is not exclusive, but it helps to distinguish between possession in furtherance of a crime, and innocent possession, such as a drug dealer who possesses a wall-mounted antique or an unloaded rifle that is locked in a cupboard and used for target shooting or in a hunting game.

*Id.* at 336:17–337:11. The Court also instructed the jury that "[i]f an attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow." *Id.* at 313:1–3. The jury received physical copies of the charge to consult during its deliberations.

After the charge, defense counsel objected to the Government's rebuttal statement that "all you need" to find a nexus is "accessibility." *Id.* at 351:8–14. Counsel for the Government responded that it was permissible "to argue that one of those factors is most compelling and would be sufficient on its own to reach that conclusion, especially when it's followed by discussion of the other factors." *Id.* at 351:19–23. The Court explained that it "made a very explicit instruction" and denied defense counsel's request for a "further curative instruction." *Id.* at 352:1–3.

3

During its deliberations, the jury submitted a note stating: "We the jury have reached a verdict on Counts One and Two. We are a hung jury on Count Three. We have members that refuse to change their vote on both sides. What is the next step, please?" *Id.* at 371:24–372:3. The Court instructed the jury to continue deliberating. *Id.* at 373:6–13. The jury reached its verdict the next day. *Id.* at 377:12–379:22.

## LEGAL STANDARD

Courts have broad discretion to grant a new trial under Rule 33, but they nonetheless must exercise that authority "sparingly" and in "the most extraordinary circumstances." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). The Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *Id.*

"It is well-settled that both the prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments, provided they do not misstate the evidence, refer to facts not in evidence, or express counsel's personal belief as to guilt or innocence." *United States v. Smith*, 778 F.2d 925, 929 (2d Cir. 1985) (quotation marks and citation omitted). "An improper summation will only warrant a new trial when the challenged statements are shown to have caused substantial prejudice to the defendant; rarely will an improper summation meet the requisite level of prejudice." *United States v. Daugerdas*, 837 F.3d 212, 227 (2d Cir. 2016) (quoting *United States v. Mapp*, 170 F.3d 328, 337 (2d Cir. 1999)). In considering whether a prosecutor's remarks rise to the level of prejudicial error, courts examine "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *United States v. Coplan*, 703 F.3d 46, 86

(2d Cir. 2012) (quoting *United States v. Gansman*, 657 F.3d 85, 96 (2d Cir. 2011)).

## DISCUSSION

Golston argues that he should receive a new trial on Count Three because the Government's rebuttal summation "rewrote the [nexus] element as a mere 'accessibility' requirement." Def. Mem. at 8. The Court disagrees.

First, the Court considers the severity of the misconduct. The Government's rebuttal remarks on the accessibility of the firearm being "all you need," "while arguably imprecise, were by no means unreasonable in light of the evidence presented at trial." *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005). Accessibility of a firearm during a drug crime is one relevant factor to the "ultimate question[:] whether the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." *Lewis*, 62 F.4th at 746 (cleaned up). In summations, where the parties are "entitled to wide latitude," the Government did not prejudice Golston by focusing on accessibility, which it perceived to be one of its strongest arguments. *Daugerdas*, 837 F.3d at 227 (citation omitted); *see* Trial Tr. at 271:16–272:22; *id.* at 310:25–311:5. And, the Government went on to detail other factors relevant to nexus—including that the gun was loaded, illegally possessed, and had a defaced serial number—diminishing the risk that the jury focused solely on whether the gun was accessible. Trial Tr. at 274:7–275:8; *id.* at 311:5–11. Any misstatement of the law on the Government's part was, therefore, far from severe.

Second, to the extent that the Government's rebuttal remarks were improper, any error was neutralized by the Court's subsequent charge to the jury. *See, e.g., United States v. Faison*, 555 F. App'x 60, 64 (2d Cir. 2014) (finding that "the district court cured any misunderstanding through its instructions to the jury"); *see also Weeks v. Angelone*, 528 U.S. 225, 226 (2006) ("[A]

5

jury is presumed [] to follow its instructions."). Golston concedes that the Court properly summarized the nexus requirement for the jury. Def. Mem. at 10. The Court also advised the jury that it must follow the Court's instruction on the law if it differed from counsel's statements. Golston contends that the Court was obligated to "provide a response to the [G]overnment's misstatement of the law," *id.*, but cites no caselaw for this proposition.

Finally, the evidence discussed above shows a "certainty of conviction absent the [purported] misconduct." *Coplan*, 703 F.3d at 86. The Government offered ample evidence to support a finding of guilt beyond a reasonable doubt on Count Three, and Golston has not shown that "absent the isolated impropriety of the prosecutor in rebuttal summation (taken in the context of the entire trial)," he would not have been convicted. *United States v. Elias*, 285 F.3d 183, 192 (2d Cir. 2002). Although the jury expressed some difficulty in arriving at the verdict, *see* Tr. at 371:24–372:3, the defense cannot be heard to say that the ultimate conviction hinged on the rebuttal summation.

## CONCLUSION

For the foregoing reasons, Golston's motion for a new trial is DENIED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 82.

SO ORDERED.

Dated: June 5, 2024
      New York, New York

_____
ANALISA TORRES
United States District Judge